# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SUSAN COTTRELL,

               Plaintiff,

v.
                                     Case No. 8:20-cv-2146-JRK

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

               Defendant.

_____/

## OPINION AND ORDER[2]

## I.   Status

    Susan Cottrell ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of chronic back pain, depression, anxiety, a wound on her lower left leg, diabetes, high cholesterol, restless leg syndrome, irritable bowel syndrome, high blood pressure, uneven legs and hips,

---

[1]     Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 19), filed June 15, 2021; Reference Order (Doc. No. 21), entered June 16, 2021.

sleep apnea, her legs "go[ing] to sleep for no reason," a "broke right upper are-[sic] still healing," and rheumatoid arthritis. Transcript of Administrative Proceedings (Doc. No. 20; "Tr." or "administrative transcript"), filed June 15, 2021, at 60, 75, 92, 111, 276, 302.

On September 22, 2017, Plaintiff protectively filed an application for DIB, and on October 17, 2017, Plaintiff protectively filed an application for SSI, alleging in both a disability onset date of May 26, 2017.[3] Tr. at 264-67 (DIB), 268-77, 278-85 (SSI). The applications were denied initially, Tr. at 59-73, 89, 133, 134-36 (DIB); Tr. at 74-88, 90, 137, 138-40 (SSI), and upon reconsideration, Tr. at 91-109, 129, 143, 144-49 (DIB); Tr. at 110-28, 130, 150, 151-56 (SSI).

On July 29, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who appeared with a non-attorney representative, and a vocational expert ("VE"). See Tr. at 37-58 (hearing transcript), 244-45 (appointment of representative documents). At the time of the hearing, Plaintiff was fifty-nine (59) years old. Tr. at 40. On September 19, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-30.

---

[3]     The DIB application was actually completed on September 26, 2017. See Tr. at 264. The SSI application was actually completed in November 2017. See Tr. at 268, 277, 278. The protective filing date for the DIB application is listed in the administrative transcript as September 22, 2017. See, e.g., Tr. at 60, 92. The protective filing date for the SSI application is listed as October 17, 2017. See, e.g., Tr. at 75, 111.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 4-5 (Appeals Council exhibit list and order), 255-57 (request for review). On July 14, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On September 12, 2020, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues: 1) the ALJ's residual functional capacity ("RFC") assessment and hypothetical to the VE are not supported by substantial evidence; 2) the ALJ "failed to properly consider [Plaintiff's] subjective complaints"; and 3) the ALJ "failed to properly consider the opinion of [Heidi L.] Mattison, [APRN, Plaintiff's] treating pain management specialist."[4]  Memorandum in Opposition to the Commissioner's Decision (Doc. No. 31; "Pl.'s Mem."), filed November 16, 2021, at 16, 20, 23 (some capitalization and emphasis omitted). On January 14, 2022, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 35; "Def.'s Mem.") responding to Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' arguments, the undersigned finds that the

---

[4]     As explained in detail below, Plaintiff alleges that the ALJ mistakenly thought Ms. Mattison's opinion was rendered by Mauricio Orbegozo, M.D., who works with Ms. Mattison. Pl.'s Mem. at 23-24. In the ALJ's Decision, this opinion is attributed to Dr. Orbegozo. See Tr. at 28-29.

Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry through step four, where he ended the inquiry based on his findings at that step. See Tr. at 17-30. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 26, 2017, the alleged onset date." Tr. at 17 (emphasis and

---

[5]       "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease, lumbar spine; osteoarthritis, bilateral knees; bilateral Achilles tendonitis; obesity." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) with the following specific limitations: [Plaintiff can] perform work at the sedentary exertional level, that does not require climbing ladders, ropes, or scaffolds; no more than occasional climbing of ramps and stairs, crouching, kneeling, crawling, balancing, and stooping; no more than frequent reaching in all directions bilaterally; no more than a concentrated exposure to extreme temperatures, humidity, wetness, vibrations, and hazards.

Tr. at 23 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is capable of performing past relevant work as an adjustment clerk and as a medical coder-biller." Tr. at 29 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from May 26, 2017, through the date of th[e D]ecision." Tr. at 30 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff's first issue (about the RFC assessment and hypothetical to the VE) is necessarily related to Plaintiff's second issue (about subjective complaints of pain). They are therefore addressed together, followed by Plaintiff's third issue (opinion of treating pain management specialist, Ms. Mattison).

### A. Subjective Complaints and RFC Assessment/Hypothetical to the VE

Plaintiff argues the ALJ, in assessing Plaintiff's RFC and later including it in the hypothetical to the VE, erred in "fail[ing] to consider [Plaintiff's] need to elevate her legs due to pain and swelling." Pl.'s Mem. at 16; see id. at 21. In making this argument, Plaintiff initially asserts the ALJ's finding at step two that her leg edema is not severe is unsupported by the evidence. Id. at 16-18. Plaintiff also relies on her own testimony about the alleged need to elevate her legs. Id. According to Plaintiff, "[t]he ALJ also failed to consider how [Plaintiff's] extreme obesity would exacerbate swelling in her lower extremities if forced to sit for six and seven hours in an eight hour day." Id. at 18. Plaintiff further argues the ALJ failed to consider an alleged side-effect of her medication, drowsiness, when assessing the RFC. Id. at 19-20, 22. Plaintiff also asserts that the ALJ did not adequately address her need to use a cane. Id. at 22. Finally, Plaintiff contends the ALJ impermissibly relied on her activities of daily living

as inconsistent with her severe allegations about how she is affected by her impairments. Id. at 23.

Responding, Defendant argues the ALJ's RFC and hypothetical to the VE are supported by substantial evidence because the ALJ property evaluated "the work-related limitations resulting from [Plaintiff's] lower extremities, back, obesity, and medication side effects"; gave Plaintiff "the benefit of the doubt"; and "adopted limitations in the RFC that generously accommodated any such restrictions." Def.'s Mem. at 4. Defendant also contends that substantial evidence supports the ALJ's findings on Plaintiff's subjective allegations. Id. at 14-18.

Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment.

8

See id. A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, the impairment either "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; see also Walker v. Comm'r, Soc. Sec. Admin., 835 F. App'x 538, 542 (11th Cir. 2020) (unpublished).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522; see also Walker, 835 F. App'x at 541-52. "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished). To be sure, "[n]othing requires that the

ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) (emphasis added); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two).

There are occasions when an ALJ identifies one or more impairments at step two but does not identify all of the impairments that should be considered severe. Any omission of a particular severe impairment at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R.

§ 404.1545(a)(5). In assessing a claimant's RFC and later incorporating that RFC into a hypothetical for a VE, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his or] her doctors."

<u>Belser v. Soc. Sec. Admin., Comm'r</u>, No. 20-12121, 2021 WL 6116639, at *6 (11th Cir. Dec. 27, 2021) (unpublished) (citing 20 C.F.R. §§ 404.1529(c)(1)-(2)). The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" also consider other factors related to symptoms such as pain, including:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. <u>Wilson</u>, 284 F.3d at 1225; <u>see also</u> <u>Dyer</u>, 395 F.3d at 1210; <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992).[6]

---

[6]    In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." <u>Id.</u> Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." <u>Id.</u> "The change in wording is meant to clarify that [ALJs] aren't in

(Continued…)

Here, the ALJ found with respect to Plaintiff's allegations of how her impairments affect her that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 24. At the outset, the undersigned observes that the ALJ's Decision reflects thoughtful consideration of Plaintiff's allegations and testimony, the medical evidence, and the remaining evidence. See Tr. at 24-29. As explained in more detail below, the ALJ's subjective complaint findings are supported by substantial evidence, both generally and as to the specific challenges Plaintiff raises.

Plaintiff initially challenges the ALJ's findings regarding her edema. The ALJ found at step two that Plaintiff has a number of severe impairments, but that Plaintiff's "lower extremity edema" is not severe because it improved with medication and diet and it does not "impose more than minimal limitations on performing basic work activities." Tr. at 18-19. The ALJ's step two findings regarding the edema are supported by substantial evidence in the record. See, e.g., Tr. at 1269 (August 1, 2018 note documenting "both legs had swelling but

---

the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

doing better"), 1276 (September 24, 2018 note documenting no edema on examination).

Regardless of the ALJ's step two findings, Plaintiff's only alleged work-related limitation having to do with the edema is that it causes her to have to elevate her legs, see Pl.'s Mem. at 16-18, a limitation the ALJ declined to accept when assessing Plaintiff' RFC, see Tr. at 23. So, the real issue is whether the ALJ's RFC assessment that excluded the alleged need to elevate Plaintiff's legs is supported by the record.

In alleging she needs to elevate her legs, Plaintiff solely relies on her own testimony. See Pl.'s Mem. at 16. Plaintiff testified she "usually sit[s] on the couch or [she]'ll have like an ottoman or something there that [she] can put [her] feet on or a toy or a table, just something." Tr. at 52. She stated she does this "[a]s long as [she is] sitting." Tr. at 52. When asked by the ALJ whether she could "have a little foot stool underneath . . . to elevate [her] feet just a few inches" or whether she needed to elevate her legs "waist high," Plaintiff responded, "It's just more comfortable for me. That's not doctor ordered or anything. Yeah, it's just more comfortable." Tr. at 52. Plaintiff went on to say that if she were sitting down and typing, she would "probably use a stool like maybe six inches up" or "prop [her] foot on the garbage can" that was approximately twelve inches high. Tr. at 53.

Plaintiff's own testimony does not establish she <u>needs</u> elevation for edema; rather, her testimony is that it is more comfortable for her to elevate her legs when she is sitting. The ALJ's election not to place an elevation requirement in the RFC is supported by substantial evidence.

Next, Plaintiff contends the ALJ failed to consider the alleged medication side-effect of sleepiness (or drowsiness). <u>See</u> Pl.'s Mem. at 19. In support, Plaintiff cites a supplemental pain questionnaire she submitted to the Administration in which she stated that her medication makes her "sleepy." Tr. at 325; Pl.'s Mem. at 19. She also cites pain management records that document unspecified "[s]ide effects of medication present." Tr. at 1315, 1374, 1385, 1391, 1398, 1405, 1411; Pl.'s Mem. at 19 (citations omitted). However, those same records document Plaintiff denied "feeling tired (fatigue)." Tr. at 1317, 1375, 1386, 1393, 1400, 1407, 1412. Moreover, Plaintiff during the hearing did not allege that sleepiness or drowsiness would preclude her from working—instead she stated her "problem is getting to [her] destination." Tr. at 53. The ALJ did not reversibly err in not discussing the alleged side effect of sleepiness.

Plaintiff also asserts the ALJ erred in electing not to credit her alleged need for a cane or assistive device. Pl.'s Mem. at 22. In finding Plaintiff does not need an assistive device, the ALJ relied on part on the opinion of primary care provider Elizabeth Herman, M.D., rendered on December 18, 2017, in which Dr. Herman stated Plaintiff does not use an assistive device for ambulation and has

"a normal gait, but limited distance walking." Tr. at 978-79; see Tr. at 16. Plaintiff argues the opinion was rendered without the benefit of all of the medical records and is undermined by three documented falls before it was issued. Pl.'s Mem. at 22-23. But, the ALJ took into account Plaintiff's "allegations of instability and poor balance, causing increased risks of falls" by limiting her to no "climbing of ladders, ropes or scaffolds, nor more than a concentrate[d] exposure to hazards." Tr. at 28. Moreover, the ALJ rejected Ms. Mattison's opinion that included a need for a cane or other assistive device. Tr. at 29. This is discussed in the next section. In sum, the ALJ adequately considered—and rejected—Plaintiff's allegation that she needs a cane or assistive device. The ALJ's findings are supported by substantial evidence.

Finally, Plaintiff argues the ALJ impermissibly relied on her activities of daily living in finding her allegations not entirely supported by the record. See Pl.'s Mem. at 23. The ALJ did not err here either, relying only in part on her activities of daily living as evidence that Plaintiff is not as limited as she alleges. See Tr. at 27. The ALJ's findings on this issue are supported by substantial evidence. See, e.g., Tr. at 44-46, 48-50 (Plaintiff's hearing testimony about her daily activities).

### B. Opinion of Ms. Mattison

Plaintiff contends the ALJ erred in evaluating the opinion of Ms. Mattison, Plaintiff's treating pain management specialist (an advanced practice

registered nurse). Pl.'s Mem. at 23-26. Plaintiff alleges that the ALJ mistakenly thought the opinion was rendered by Dr. Orbegozo, who works together with Ms. Mattison at Physician Partners of America Pain Relief Group. Id. at 23-24. Plaintiff also disagrees with the ALJ's reasoning for finding the opinion not to be persuasive. Id. at 24-26. Responding, Defendant contends any mistake the ALJ made in thinking the opinion was authored by Dr. Orbegozo was because of the way it was presented to the ALJ by Plaintiff's representative. Def.'s Mem. at 18-20. Defendant also asserts the ALJ properly evaluated the opinion under the revised Regulations. Id.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20

C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources" to include licensed advanced practice registered nurses for the impairments within his or her licensed scope of practice). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. June 27, 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R.

_____

[7]     Plaintiff filed her DIB and SSI applications after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

§ 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[8]

Here, it is likely Ms. Mattison rendered the August 23, 2018 opinion that stated in relevant part: Plaintiff's pain will frequently affect her attention and concentration during a workday; she cannot walk any city blocks without rest or severe pain; she can sit only one hour at a time and stand five minutes at a time; she will need unscheduled breaks every hour for five to ten minutes; she needs a cane or other assistive device while engaging in occasional standing or walking; she can never lift anything; and she has significant limitations in reaching. Tr. at 1142-45. The cover letter for the form on which the opinion was rendered and that was sent to the SSA indicates the opinion is by "Dr. Mauricio Orbegozo." Tr. at 1141. Moreover, the form itself indicates it is "To: Dr. Mauricio Orbegozo." Tr. at 1142. However, the signature at the end, while illegible, contains the designation "ARNP" which would tend to suggest it was Ms.

---

[8]    When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

Mattison. Tr. at 1145. At the hearing, Plaintiff's counsel referred to the opinion as "from Dr. Orbegozo." Tr. at 40.

The ALJ understandably believed the form was completed by Dr Orbegozo. See Tr. at 28-29 (referring to the opinion as Dr. Orbegozo's). The ALJ found the opinion was not "persuasive, as this extremely restrictive opinion is not consistent with Dr. Orbegozo's own treatment notes or supported by subjective examination findings from the Florida Pain Relief Group, nor is it consistent with the rest of the medical evidence of record." Tr. at 29. The ALJ pointed out one particular example that "although Dr. Orbegozo indicate[d Plaintiff] required a cane, his treatment records do not document the use of a cane at her appointments; and instead document generally normal gait and station." Tr. at 29 (citation omitted). The ALJ concluded, "While I find [Plaintiff] is limited to less than sedentary work, the restrictions suggested by Dr. Orbegozo are excessive and unsupported by the totality of the record." Tr. at 29.

To the extent the ALJ mistakenly believed the form came from Dr. Orbegozo rather than Ms. Mattison, the mistake was harmless. The two practice together at the same facility, and the ALJ did not rely on Dr. Orbegozo's status or specialty in addressing the opinion. Moreover, the ALJ's reasons for finding the opinion not persuasive are supported by substantial evidence. See, e.g., Tr. at 1292-1436 (treatment records). Plaintiff does not suggest the ALJ was wrong in observing she did not need an assistive device during

20

appointments, instead disagreeing with the ALJ's reasoning generally. See Pl.'s Mem. at 24-25. But, this Court cannot reweigh the evidence or substitute its own judgment. In sum, the ALJ appropriately assessed the opinion under the revised Regulations, and the ALJ's findings are adequately supported.

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Based on the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as well as § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 8, 2022.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record